**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TINA PEREZ,

    Plaintiff,

                                                       Case No. 8:04-CV-1634-T-17EAJ

vs.

CHECKERS DRIVE-IN
RESTAURANTS, INC.

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      This cause comes before this Court on Defendant, Checker's Drive-In Restaurants, Inc.'s (Checkers), Motion for Summary Judgement (Docket No. 13) filed June 20, 2005, and Plaintiff, Tina Perez's, Memorandum in Opposition and accompanying exhibits (Dkt. No. 21, 22-1 through 22-6) filed July 5, 2005.  The Court has also considered Checkers' Reply Memorandum in Response to Plaintiff Tina Perez's Memorandum in Opposition (Dkt. 27) filed July 15, 2005, and the plaintiff's Sur-Reply (Dkt. 30) filed July 25, 2005.  For the reasons set forth below, this motion is **DENIED**.

I. Procedural History & Background

      The relevant facts as alleged by Plaintiff in her Memorandum in Opposition state that she was sick in late February 2004, and that she requested and was granted leave from work.  (Dkt. 21).  She was treated by her physician on February 23, 2004, and received prescriptions to treat her for a diagnosis of "possible allergic rhinitis and premenopausal symptoms." (Id.)  Plaintiff states that she showed signs of a urinary tract infection at that time, but nevertheless returned to work despite being sick.  (Id.)  She continued to work the rest of the week and into the next as required by Defendant, despite assertions that she was still sick and needed more time off.  (Id.)

CASE NO. 8:04-CV-1634-T-17EAJ

After working for nine days in a row, she informed her supervisor that she was sick, and she was given permission to take two days off. (Id.)

On the third day after being granted time off, Friday, March 12, 2004, Plaintiff again called in sick and went back to her doctor that same day, was diagnosed with a bladder infection, and prescribed additional medication. (Id.) Plaintiff asserts that, "[i]f not treated properly, a urinary tract infection can lead to something more serious . . . ." (Id.) Plaintiff called her employer and reported that she needed more time off from work because of the urinary tract infection, and asserts her condition worsened over the weekend. (Id.)

On Monday, March 15, 2004, Plaintiff obtained from her doctor, and faxed to her employer, a form titled "Certificate for Return to School or Work." (Id.) The undated note, signed by use of a rubber stamp, stated simply:

> Tina Perez has been under my care from 3-12-04 to 3-15-04 and is able to return to [no entry] on 3-18-04. Limitations/remarks: Rest and medication.

(Dkt. 22-3, Exh. A.[1]) Plaintiff informed her employer that, pursuant to her doctor's instructions, she would return to work on Thursday, March 18, 2004. (Dkt. 21) Plaintiff's employment with Defendant, however, ended on March 17, 2004. Plaintiff contends that she was fired; Defendant contends that Plaintiff resigned.

Plaintiff sued Defendant on July 14, 2004, alleging that she was wrongfully terminated on March 17, 2004, in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et. seq. (Dkt. 1-1) In particular, Plaintiff asserted that she was an eligible employee under the FMLA, that she had a "serious health condition within the meaning of the FMLA," and that Defendant interfered with her rights in violation of the FMLA by: "a. denying her FMLA leave to which she was entitled; b. refusing to reinstate her upon expiration of her FMLA leave; [and] c. terminating her employment." (Id.)

---

[1]Reputed copies of the note have been provided by both parties as exhibits (Dkt. 13, Exh. F, and Dkt. 22-3, Exh. A). Although the "copies" on file with the Court are quite distinct from each other in appearance, the content in the two does not differ in any material way.

CASE NO. 8:04-CV-1634-T-17EAJ

Defendant Checkers filed its Motion for Summary Judgment on June 20, 2005, asserting that "Plaintiff did not qualify for the protections afforded by the [FMLA]" because she "did not suffer from a 'serious health condition.'" (Dkt. 13). Defendant asserted that Plaintiff, therefore, cannot prevail as a matter of law. As a serious health condition is a threshold issue for eligibility for the protections of the FMLA, if the Plaintiff did not suffer a serious health condition, then none of the other facts in dispute are of any consequence.

II. Standard for Summary Judgment

Summary judgment is appropriate only if the Court determines "that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This determination, however, is not based solely on the pleadings, but can be made if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," support the contention that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).

Once the moving party has properly supported its motion for summary judgement, the nonmoving party must go beyond the pleadings to show that a genuine issue exists for trial. Celotex Corp., 477 U.S. at 324. That party must come forward with evidence sufficient to establish the existence of the essential elements of that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In determining whether the moving party has satisfied its burden, the Court must believe the evidence of the nonmovant, and draw all justifiable inferences in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The question before the Court, then, is not whether the judge "thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252 (emphasis added). However favorable that belief may be, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient to defeat a motion for summary judgment. Id. Where the record, as a whole, cannot lead a rational trier of fact to

CASE NO. 8:04-CV-1634-T-17EAJ

find for the nonmoving party, then there is no genuine issue to be resolved at trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

### III. Discussion

In its motion, Checkers asserts that summary judgment must be granted in its favor because Plaintiff did not suffer from a serious health condition, and, thus, did not qualify for any of the protections afforded under the FMLA. (Dkt. 13). Despite Defendant's bold assertion that "the record evidence <u>establishes</u> that Plaintiff never requested FMLA leave, that Plaintiff was never entitled to or in need of FMLA leave, and that Plaintiff voluntarily resigned her position with Defendant" (Dkt. 13, emphasis added), the pleadings, depositions, and other documents filed with the Court in this matter at least suggest that there is disagreement on what can be established with regard to all three of these points. However, as suggested by Defendant, the underlying question presented to the Court is whether, as a matter of law, there is any genuine issue as to any material fact with regard to Plaintiff's health condition such that Defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). As "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," <u>Celotex Corp.</u>, 477 U.S. at 323, whether Plaintiff suffered a serious health condition at the time her employment ended is the first question to be resolved at this time.

At the outset, the Court notes that the parties' ongoing dispute regarding the meaning which should be given to certain utterances by the Plaintiff's doctor in his deposition suggests on its own that there is at least some issue as to this material fact. Beyond the usual motion and one response, this case presents a reply to a response and a sur-reply, and all four documents focus on certain statements by the treating physician. The heart of the dispute over the doctor's words can be found in two excerpts from his deposition. The Court notes that the doctor appears even to contradict himself, saying at one point that Plaintiff showed certain symptoms on February 23, 2004, and saying at another point that she had those symptoms only on March 12, 2004. In the first instance, the deposition indicates the following said:

    Q.    Did Mrs. Perez have any symptoms of a urinary tract infection when you saw her on February 23rd, 2004?

CASE NO. 8:04-CV-1634-T-17EAJ

> A. She was spotting that night. Spotting mean[s] it could come from bladder, vagina. I'm not sure. But when I did examine her, she had suprapubic tenderness, which is confirming my diagnosis and that's the reason why I diagnosed urinary tract infection.

Dkt. 15-2 at 26, lines 10–17.  In the second instance, however, the deposition includes this exchange:

> Q. [D]id Mrs. Perez have any symptoms of spotting on February 23rd?
> A. Not according to my records.
> Q. Those were the symptoms that occurred on the March 12th visit; is that correct?
> A. March 12th.
> Q. 2004, correct?
> A. Yes.

Id. at 35, lines 4–12.

    Thus it would certainly appear that, with testimony from the Plaintiff, self-contradictory testimony from her doctor, and various assertions attributed to different employees of the Defendant regarding Plaintiff's medical condition at the time her employment ended, there is much more than a scintilla of evidence to suggest a genuine issue of material fact with regard to whether Tina Perez suffered from a serious health condition such that the FMLA could apply to her situation.

    That does not, however, end our inquiry.  A related question is whether Defendant received enough information from Plaintiff from which it could be considered on notice that FMLA protections might apply to Plaintiff's situation in February and March of 2004.  Plaintiff does not dispute that she did not mention FMLA or specifically ask for leave pursuant to the protections of the FMLA, and notes correctly that an employee does not have to formally request FMLA leave in order to protect an entitlement under the Act. (Dkt. 21)  As the Eleventh Circuit has observed, "[t]he Code of Federal Regulations makes clear that an employee taking unforeseeable leave 'need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.'"  Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1209 (11th Cir. 2001) (quoting in turn from 29 C.F.R. § 825.303(b)).  That said, the Eleventh Circuit has recently upheld a decision by a sister court in

CASE NO. 8:04-CV-1634-T-17EAJ

this district in which the district court granted summary judgment in favor of an employer because the plaintiff "failed to provide sufficient notice to [her employer] that she was requesting leave for a potentially FMLA-qualifying reason." Cruz v. Publix Super Markets, Inc., ___ F.3d ___, 2005 WL 2840255, *1 (11th Cir., Oct. 31, 2005).

In Cruz, the plaintiff asked for time off for the birth of a grandchild. Id. She did not tell her employer that her daughter was having complications with the pregnancy, though she did obtain a letter from her daughter's doctor stating that "Mother's presence would help their difficult situation at this time." Id. at **1–2. There was nothing in the note referring to any medical complications due to the pregnancy, and the plaintiff was denied FMLA leave. Id. Ultimately, the plaintiff was terminated for job abandonment. Id. Noting that the plaintiff had failed to offer any additional information beyond her own beliefs regarding her daughter's condition and need for help, the court concluded that her employer had no burden to request additional information. Id. at *6. The court held that, "[u]nless the employer already knows that the employee has an FMLA-approved reason for leave, the employee must communicate the reason for leave to the employer; the employee cannot just demand leave." Id.

Unlike the situation in Cruz, where the Plaintiff admitted withholding critical information regarding her request, though without any intent to mislead her employer, in this case, Plaintiff has described numerous conversations she had with Defendant's employees regarding her requests for leave and the medical reasons for those requests. Although Defendant may assign different meaning to those conversations or dispute their content, the depositions submitted suggest at least that the conversations occurred. This, too, suggests a meaningful dispute with regard to the question of notice.

Finally, despite Plaintiff's assertions that Defendant is foreclosed from even arguing that Plaintiff did not have a period of incapacity because "Defendant failed to request FMLA medical certification of Plaintiff's need for leave or time off from work" (Dkt. 21), there is some question whether reported assertions by various employees that Plaintiff was asked to provide a doctor's note might amount to such a request. Even if they do not, the Court observes that the "doctor's

CASE NO. 8:04-CV-1634-T-17EAJ

note" discussed <u>supra</u> as submitted by the parties is the only medical documentation provided to Defendant, and it is woefully lacking in meaningful detail.

In light of the above, and taking the facts in the light most favorable to the nonmoving party, as it is required to do, the Court cannot help but conclude that Defendant's Motion for Summary Judgement, based as it is on primarily on the assertion that Plaintiff did not suffer from a serious health condition, must fail. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 29) be **DENIED**, and the parties are directed to select a mediator from the Court list of approved mediators within fifteen days of this order and to notify the Court of that selection. If the parties cannot select a mediator by consent, the Court will appoint a mediator. In either case, the Court will issue a separate order directing the parties to mediate this case.

**DONE and ORDERED** in Chambers in Tampa, Florida, on this 15th day of November, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record